```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
WILLIAM BASTUK,
                                              DECISION
              Plaintiff,                      and ORDER

vs.                                           12-CV-6154T


COUNTY OF MONROE, et al.,

              Defendants.
_____
```

### INTRODUCTION

Plaintiff, William Bastuk, ("Bastuk" or "Plaintiff"), brings this action under 42 U.S.C. § 1983, against the County of Monroe ("County"), Monroe County Sheriff Patrick O'Flynn ("Sheriff O'Flynn"), Investigator Patrick Crough (Inv. Crough"), Investigator Steve Peglow ("Inv. Peglow"), former Monroe County District Attorney Michael Green, ("DA Green"), and former Assistant District Attorney Kristy Karle, ("ADA Karle").

Plaintiff's claims arise out of his 2008 arrest and prosecution on charges of raping a 16-year-old girl ("the Complainant"). The charges were based on a May 15, 2008 complaint by the Complainant who alleged that she had been raped by Bastuk on September 5, 2007, between the hours of 8:00 and 9:00 pm in a shed at the Rochester Yacht Club ("Yacht Club") during an end of year sailing party. She provided a supporting deposition and selected Bastuk out of a line-up. Complaint ¶ 24-30, 37.

Plaintiff was arrested on June 20, 2008, and on June 21, 2008 he pled not guilty before Hon. Theresa Johnson in Rochester City Court. Id., ¶ 69. On August 26, 2008, Bastuk was arraigned on Rape 1st, 2nd and 3rd and unlawful imprisonment. Id., ¶ 91. On May 15, 2009, Bastuk was acquitted of all charges by a jury. Id., ¶ 127. Plaintiff commenced this action on March 24, 2012, asserting claims for violations of 42 U.S.C. § 1983.

BACKGROUND

Plaintiff alleges that Inv. Peglow and Inv. Crough failed to (1) adequately interview witnesses; (2) explore the possibility of other perpetrators; and (3) investigate the discrepancies between the Complainant's version of the story and other contradictory evidence. Specifically, he claims that the investigators taped an interview with Plaintiff without Plaintiff's knowledge, and withheld information about the date of the alleged rape. Plaintiff points out that Invs. Peglow and Crough failed to notice during their investigation that the shed in which the rape allegedly occurred could not be locked from the inside, undermining the victim's version of events. Moreover, the investigators failed to discover that the Yacht Club had a long-standing policy of prohibiting indoor locks on the shed doors. Complaint, ¶¶ 45-46. In addition, Plaintiff passed a polygraph test and was refused a second test by the Monroe County

Sheriff's Department. Id., ¶ 57. Finally, Plaintiff alleges that Invs. Peglow and Crough did not exercise their responsibility to fully assess the reliability of the complainant given her history of mental illness and psychosis prior to the alleged rape and failed to fully assess the conflicting statements by the Complainant in her diary and her allegations.

The complaint alleges that ADA Karle violated Plaintiff's constitutional rights by reneging on a bail agreement that she had made with defense counsel resulting in his confinement in the Monroe County Jail from June 20 to June 21, 2012, until his wife posted bail. Complaint, ¶¶ 70-72. He was not released, and instead was transported to Rochester General Hospital by Monroe County Sheriff's deputies against his will for a psychological evaluation. Complaint, ¶¶ 71-77. Plaintiff claims that the Monroe County Sheriff's Department failed to inform him of his right to refuse a psychiatric examination after he had posted bail. Id., ¶ 89.

During the week of August 18, 2008, an indictment was returned against Bastuk which he claims was the product of fraud and perjury. He also claims that the indictment was tainted due to the suppression of material evidence by the Sheriff and the DA's office. The complaint alleges that ADA Karle failed to turn over exculpatory material to Plaintiff as required by Brady v. Maryland, 373 U.S. 83

(1963) ("Brady"). That evidence included the Complainant's diary entries, her pre-incident medical records, and the negative results of the lab tests on her underwear. Complaint ¶¶ 90, 92, 93. Plaintiff contends that ADA Karle's failure to turn over this information caused a months-long delay in the trial. Plaintiff asserts that the Brady material was not turned over until, shortly before the trial, the judge ordered the disclosures. Complaint, ¶¶ 99, 102, 121-123.

Plaintiff also alleges that ADA Karle failed to have a critical witness interviewed as part of her investigation. In an August 30, 2007 diary entry, the complainant anticipated that she would be raped the evening of September 5, 2007, because she had a dream about her history and religion teacher raping her. Complaint, ¶¶ 124-125. ADA Karle did not have this teacher interviewed. Plaintiff also claims that ADA Karle maliciously prosecuted him despite the fact he had an alibi for the time-period during which the rape allegedly occurred. Id., ¶ 112.

As to DA Green, Plaintiff alleges that he had actual or constructive knowledge of the misconduct of the ADA and took no steps or grossly inadequate steps to train or supervise the assistant district attorneys in his office thereby actually or constructively condoning, facilitating, and encouraging unconstitutional practices. Id., ¶ 130. Furthermore, Plaintiff alleges that the DA's office had a

4

custom, policy, pattern and practice of bad faith withholding of access to evidence within the custody of the Sheriff's Department and in the control of the DA's office. Id., ¶ 131.

As to the Sheriff's Department, Plaintiff alleges that it had a "custom, policy or pattern and practice of failing to adequately investigate leads, of pressuring witnesses to make false identifications, and to withhold material exculpatory and impeachment evidence from prosecutors." Complaint, ¶ 132. Plaintiff further alleges that there were "many cases" involving these unlawful practices and that the County has "done nothing to rectify the illegal investigative practices of its investigators." Id., ¶ 133. Plaintiff further alleges that the City had a custom or policy of failing to train or supervise its officers with respect to rape investigation techniques, including "pressuring witnesses to make false identifications, falsifying inculpatory evidence," and other matters. Id., ¶ 134.

Based on these allegations, Plaintiff asserts five causes of action: (1) the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights to be free from malicious prosecution, false arrest and false imprisonment; (2) the deprivation of Plaintiff's 14th Amendment right of due process of law by withholding material exculpatory and impeachment evidence, coercion and deliberately

5

failing to conduct a constitutionally adequate investigation; (3) a civil rights conspiracy to deprive Plaintiff of his Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizures, false arrest, false imprisonment, malicious prosecution and deprivation of liberty without due process of law; (4) supervisory liability against Sheriff O'Flynn; and (5) municipal liability against Monroe County and DA Green. Plaintiff seeks compensatory and punitive damages in an unspecified amount.

DISCUSSION

In reviewing a motion to dismiss on the pleadings, "the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff." Frazier v. Coughlin, 850 F.2d 129 (2d Cir. 1988). The court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Ricciuti v. New York City Transit Authority, 941 F.2d 119 (2d Cir. 1991).

A. The District Attorney's Office Defendants

Defendants DA Green and ADA Karle are protected by absolute prosecutorial immunity. "[I]t is well settled that prosecutors are entitled to absolute immunity against Section 1983 claims for actions

performed within the course of their prosecutorial duties, including but not limited to the presentation of evidence to grand juries and participation in criminal trials." Brown v. Ontario County, 787 F.Supp.2d 273, 277 (W.D.N.Y. 2011), citing, Imbler v. Pachtman, 424 U.S. 409, 427-28, 96 S.Ct. 984, 47 L.Ed. 128 (1976), and Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986).  However, absolute immunity may not apply when a "prosecutor is not acting as 'an officer of the court' but is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 342, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009), citing, Imbler, 424 U.S. at 431 n. 33, 96 S.Ct. 984). A prosecutor who engages in such activities is protected instead only by qualified, good-faith immunity. Scalfani v. Spitzer, 734 F.Supp.2d 288, 296 (E.D.N.Y. 2010) citing, Van de Kamp.

A prosecutor's failure to disclose exculpatory evidence is protected by absolute immunity. Lawlor v. Connelly, 471 Fed.Appx. 64, 65 (2d Cir. 2012)(stating that "[t]his Court has repeatedly held . . . that a prosecutor is absolutely immune from liability under 42 U.S.C. § 1983 for his conduct before a grand jury" and that "this Court has specifically held that a prosecutor is immune from § 1983 liability for withholding exculpatory evidence from a grand jury")(citations omitted); see also Warney v. Monroe County, 58 F.3d

7

113, 125 (2d Cir. 2009)("if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 (1963); but they would be absolutely immune from personal liability").

Although Plaintiff drafts his claim in terms of an alleged failure to conduct a thorough investigation, that does not render the complained-of conduct "investigatory" in nature. Plaintiff's claim rests squarely on the prosecutor's decision to bring criminal charges against Plaintiff. That is a prosecutorial task. Schnitter v. City of Rochester, 931 F.Supp.2d 469, 474  (W.D.N.Y. 2013); Stein v. Disciplinary Bd. of Supreme Court of New Mexico, 520 F.3d 1183, 1194 (10th Cir. 2008) citing, Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed. 209 (1993).

Plaintiff argues that DA Green's failure to supervise or train ADAs on their obligations under Brady is not a protected prosecutorial function but instead an administrative function that is not subject to immunity. A complete failure by the DA to train ADAs on fulfilling Brady obligations could constitute deliberate indifference sufficient to give rise to § 1983 municipal liability. Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992).  However, here, Plaintiff fails to adequately plead such a claim.

To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train his employees amounts to "'deliberate indifference to the rights of persons with whom the [employees] c[a]me into contact.'" Connick v. Thompson, __ U.S. __, 131 S.Ct. 1350, 1359, 179 L.Ed. 417 (2011), quoting, City of Canton Ohio v. Harris, 489 U.S. 378 (1989).

Plaintiff does allege that DA Green "acted intentionally, maliciously, and with reckless disregard for and deliberate indifference to Plaintiff's rights, created and maintained an unconstitutional official custom, practice, or policy by participating directly in the bad-faith denial of access to exculpatory evidence to Plaintiff and his counsel" as well as failed to "provide or provided grossly inadequate training and supervision regarding the obligation to disclose exculpatory evidence to defense counsel or the court, despite actual or constructive knowledge that the failure to provide such training, supervision, and discipline had led to or was likely to lead to the constitutional violations" Complaint, ¶¶ 164, 166. But the complaint is devoid of any particulars supporting these conclusory assertions.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 131 S.Ct. at

9

1360, quoting, Board of County Comm'rs of Bryan Cty. V. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). While the Supreme Court has left open the possibility that a single incident could give rise to train or supervise claim, the Court has cautioned that only a "narrow range of circumstances would support such single-incident liability, where the "unconstitutional consequences of failing to train [were] patently obvious . . ." Connick, 131 S.Ct. at 1361. No allegations supporting either theory have been pleaded here.

In any event, such a claim cannot be predicated on boilerplate allegations of the sort presented in this case.  In deciding motions to dismiss, it is "required that plaintiffs provide more than a simple recitation of their theory of liability[.] Sims v. City of New York, 2011 WL 4543051 at *2 n. 3 (E.D.N.Y. Sept. 28, 2011) (collecting cases), aff'd, 480 Fed. Appx. 627 (2d Cir. 2012). However, "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), quoting, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a claim must contain factual allegations sufficient "to raise a right to relief above the speculative." Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007).

"While legal conclusions can provide the framework of a claim, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

Here, Plaintiff has simply added a claim that the alleged violation of his constitutional rights was due in part to a failure of DA Green to train and supervise his subordinates. That is precisely the sort of "[t]hreadbare recital[] of the elements of a cause of action" that is insufficient to state a cause of action. Iqbal. 556 U.S. at 678, 129 S.Ct. 1937. Given the limited factual support for Plaintiffs' failure to train claim, it cannot survive a motion for judgment on the pleadings.

To the extent that Plaintiff's claims against DA Green and ADA Karle are asserted against them in their official capacities, they are also barred by the Eleventh Amendment. In their role as prosecutors, DA Green and ADA Karle "acted in all relevant respects, on behalf of New York State, which itself is immune under the Eleventh Amendment." Doe v. Green, 593 F.Supp.2d 523, 535 (W.D.N.Y. 2009). That immunity extends to them, in their official capacities as well. Id.

Plaintiff's claims against the County must also be dismissed. First, the complaint does not adequately allege that the purported violations of plaintiff's rights were due to any customs or policies

11

of the County, for the same reasons stated with respect to DA Green's supervisory liability. Second, the County cannot be held liable for DA Green's and ADA Karle's actions, because they acted on behalf of New York State. "The case law is clear that a county in New York cannot be held liable for the prosecutorial acts of a district attorney, because the DA acts in that capacity on behalf of the state, not the county." 593 F. Supp.2d at 534 (citations omitted). In Green, the Court dismissed a claim alleging that the defendant county maintained certain policies or customs concerning grand jury investigations and prosecutions of certain types of crimes, on the ground that those "were not policies of the County—which lacked the authority to set such policies—but policies of the DA, acting on behalf of New York State." Id. The same reasoning applies here.

B. The Sheriff's Office Defendants

Plaintiff's claims against Sheriff O'Flynn and Investigators Crough and Peglow are also subject to dismissal. Since Invs. Peglow and Crough were not directly involved in the decision to prosecute Plaintiff, the claim against them is essentially a claim for false arrest. "A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, an action for false arrest requires that the plaintiff show that "1) the

defendant intended to confine him, 2) the plaintiff was conscious of the confinement, 3) the plaintiff did not consent to the confinement and 4) the confinement was not otherwise privileged." Broughton v. State of New York, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975).

"Probable cause 'is a complete defense to an action for false arrest brought under New York law or § 1983." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012), quoting, Weyant, 101 F.3d at 852. "Probable cause to arrest exists when the officers have . . . reasonably trustworthy information as to [] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007). "In deciding whether probably cause existed for an arrest, we assess 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" Ackerson, 702 F.3d at 19, quoting, Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006).

Even if a complaint states an otherwise viable false arrest claim, "[q]ualified immunity is a complete defense to false arrest claims. An arresting officer is entitled to qualified immunity even when . . . probable cause to arrest does not exist, "if he can

establish that there was "arguable probable cause" to arrest.'" Ackerson, 702 F.3d at 21, quoting, Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists if either(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id.

In the case at bar, Plaintiff was accused of raping a 16-year-old girl. She picked him out of a line-up and her testimony was corroborated by her treating therapist who wrote in a report that the Complainant "show[ed] all the common signs of a rape victim" and "believe[d] her allegations to be true." Complaint, ¶ 58. Although there was a lack of corroborating physical evidence, the doctor who performed the physical examination noted that it did "not rule out the possibility of sexual abuse, as 80-90% of sexually abused children have normal examinations." Defendants' Exhibit C. Moreover, the lack of physical evidence is not unexpected given the fact that the complaint was made 8 months after the alleged act occurred. In addition, Mike Stooler, a bartender at the Yacht Club, stated that many female staff had complained about Bastuk touching them inappropriately. Stooler's later repudiation of that statement when interviewed by Plaintiff's private investigator is immaterial since there is no indication that Invs. Peglow or Crough were aware of that

14

fact before the arrest. Finally, one of the Complainant's friends informed Inv. Peglow before the arrest that the Complainant had been acting oddly at the start of the 2007-2008 school year, shortly after the alleged rape, and that the Complainant had confided in her about the rape. In light of the foregoing facts which supply sufficient probable cause for his arrest, Plaintiff is engaging in pure speculation by asserting that Invs. Peglow and Crough should have doubted the Complainant's veracity in light of her psychiatric history (i.e., that her family noted she had been depressed over the past few months) and conflicting statements she made in her diary.

Police officers have no duty to search for exculpatory evidence or to go to great lengths to determine whether the accuser's credibility might be called into question absent some obvious reason to doubt her. See, Schnitter v. City of Rochester, 931 F.Supp.2d 469 (W.D.N.Y. 2013); Rhodes v. Tevens, No. 07-CV-471, 2012 WL 777421 at *6 (W.D.N.Y. 2012); (officers "were not obligated to pursue every lead or engage in extensive fact-finding regarding the complainant's credibility"), citing, Gisondi v. Town of Harrison, 72 N.Y.2d 280, 285, 532 N.Y.S.2d 234, 528 N.E.2d 157 (1988).

Although plaintiff alleges that the Complainant's accusations were false, the only allegation of bad faith was that Inv. Peglow handed a

copy of papers relating to Plaintiff's arrest to Inv. Crough and stated, "Here's the copy for the D & C." This exchange between the two officers merely shows the conduct of business during the handing of a case involving a person of public interest. There are no allegations indicating that the officers engaged in any fraudulent or bad-faith conduct, and they were therefore "entitled to rely on the presumption of probable cause arising from the Indictment when arresting" plaintiff. Blasini v. City of New York, No. 11 Civ. 3022, 2011 WL 6224605, at *5 (S.D.N.Y. Dec. 14, 2011). See also, Dale v. Kelley, 908 F. Supp. 125, 138 (W.D.N.Y. 1995) (village police chief's reliance on district attorney's "relatively more expert opinion that probable cause existed was objectively reasonable as a matter of law"), aff'd, 95 F.3d 2 (2d Cir. 1996).

Plaintiff's claims against Sheriff O'Flynn fare no better than his claims against DA Green and the County. Plaintiff has made only conclusory allegations concerning Sheriff O'Flynn's alleged failure to train and supervise his employees. Plaintiff's conclusory allegations that Sheriff O'Flynn has failed to train its police officers do not constitute "facts which demonstrate that the need for training was obvious such as there were proof of repeated complaints of similar civil rights violations followed by no meaningful attempt . . . to investigate or to forestall such incidents." Zalaski v. City

of Hartford, 2011 WL 6130770, at *7 (D.Conn. Dec. 8, 2011). Plaintiff has thus failed to adequately allege that the constitutional violations arose from a *de facto* policy or custom or that Sheriff O'Flynn acted with deliberate indifference in failing to adequately train his police officers in the sheriff's department.

C. Conspiracy Claims

In order to survive a motion to dismiss on a conspiracy claim under §1985, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of person of the equal protection of the laws; or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983). In addition, the conspiracy must be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Britt v. Garcia, 457 F.3d 264, 270 n.4 (2d Cir.2006) (internal quotation marks omitted).

Plaintiff's complaint alleges a conspiracy among the defendants (1) to withhold material exculpatory evidence from prosecutors in the

DA's office and (2) to conduct an adequate investigation into the alleged violation of his constitutional rights. Defendants argue that the intracorporate conspiracy doctrine precludes Plaintiff from prevailing on his conspiracy claim.

"[I]t is well settled that there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment." Ahmed v. Gelfand, 160 F.Supp.2d 408, 413 (E.D.N.Y. 2001) (citing Girard v. 94th Street and Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir.), cert. denied, 425 U.S. 974 (1976); see also Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978).

Since defendants are employees of Monroe County, and the alleged constitutional violations occurred during the course of their employment, Plaintiff's conspiracy claims must be dismissed. See Varricchio v. County of Nassau, 702 F.Supp.2d 40, 62 (E.D.N.Y. 2010) (dismissing § 1985 conspiracy claim where it was undisputed that the alleged conspirators all were employees of Nassau County). Contrary to Plaintiff's contention, Girard does not stand for the proposition that intracorporate immunity applies only to a single act of conspiracy as opposed to the multiple acts he has pled in his complaint. Johnson v. Nyack Hosp., 954 F. Supp. 717, 723-24 (S.D.N.Y. 1997) (discussing Girard). Although there are some suggestions in the

caselaw that intracorporate immunity should apply only in circumstances where the alleged conspiracy encompassed no more than a single act of discrimination, Johnson, 954 F. Supp. At 724 n.15 (citing cases), "such a line responds neither to the text nor to the objectives of Section § 1985. Section 1985 depends on multiple actors, not on multiple acts of discrimination or retaliation." Travis v. Gary Community Mental Health Ctr., Inc., 921 F.2d 108, 110 (7th Cir. 1990). Therefore, the Court rejects Plaintiff's attempt to evade application of intracorporate immunity as it based on a misreading of Girard and is not established by any relevant Second Circuit precedent.

To the extent that Plaintiff alleges a conspiracy between employees of the District Attorney's office and the Sheriff's Office, the complaint simply does not allege any plausible facts to establish such a conspiracy. Plaintiff here has provided only vague and conclusory allegations that defendants entered into an unlawful agreement. These do not suffice. Kiryas Joel Alliance v. Village of Kiryas Joel, 495 Fed. Appx. 183, 190 (2d Cir. 2012); Webb v. Goord, 340 F.3d 105, 110-110 (2d Cir. 2003)("[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit to achieve the unlawful end.")

19

CONCLUSION

None of Plaintiff's claims can survive a motion to dismiss. Plaintiff's complaint is therefore dismissed. Defendants' motion for judgment on the pleadings is granted (Dkt. #15) and the complaint is dismissed with prejudice.

IT IS SO ORDERED.

                                              S/Michael A. Telesca
                                      _____
                                      Honorable Michael A. Telesca
                                      United States District Judge

DATED: November 19, 2013
       Rochester, New York